UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MASSACHUSETTS BRICKLAYERS AND MASONS TRUST FUNDS and THE PIPEFITTERS' RETIREMENT FUND LOCAL 597, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>DEUTSCHE ALT-A SECURITIES, INC., et al.<br><br>Defendants. | 08 Civ. 3178 (LDW) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ..... 1

II. ARGUMENT ..... 2

A. Plaintiffs Lack Standing With Respect To Twelve Of The Fourteen Offerings ..... 2

B. Plaintiffs Fail to Plead Adequately Material Misrepresentations ..... 4

1. Plaintiffs Have Not Alleged Adequately That The Offering Documents Materially Misrepresented The Underlying Loans ..... 4

2. Plaintiffs Have Failed to Allege Any Misstatement Concerning Credit Ratings ..... 7

C. Any Viable Claims Would Be Time-Barred ..... 8

III. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
No. 08 Civ. 7508, 2009 WL 2828018 (S.D.N.Y. Sept. 2, 2009)....................3

*Barnes v. Osofsky*,
373 F.2d 269 (2d Cir. 1967)....................3

*Brin v. S.E.W. Investors*,
902 A.2d 784 (D.C. Ct. App. 2006)....................10

*Garber v. Legg Mason, Inc.*,
537 F. Supp. 2d 597 (S.D.N.Y. 2008)....................6

*Hoffman v. UBS-AG*,
591 F. Supp. 2d 522 (S.D.N.Y. 2008)....................3, 4

*In re AIG Advisor Group Sec. Litig.*,
No. 06-CV-1625, 2007 WL 1213395 (E.D.N.Y. Apr. 25, 2007)....................3

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008)....................2

*In re Donald J. Trump Casino Sec. Litig.*,
7 F.3d 357 (3d Cir. 1993)....................5

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
No. 98 Civ. 4318, 2000 U.S. Dist. LEXIS 13469
(S.D.N.Y. Sept. 20, 2000)....................4

*In re Friedman's, Inc. Sec. Litig.*,
385 F. Supp. 2d 1345 (N.D. Ga. 2005)....................3

*In re Global Crossing, Ltd. Sec. Litig.*,
313 F. Supp. 2d 189 (S.D.N.Y. 2003)....................3

*In re MBIA Inc. Sec. Litig.*,
05 Civ. 03514, 2007 WL 473708 (S.D.N.Y. Feb. 14, 2007)....................10

*In re Merrill Lynch & Co.*,
273 F. Supp. 2d 351 (S.D.N.Y. 2003)....................9

*In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*,
434 F. Supp. 2d 233 (S.D.N.Y. 2006)....................4

*In re Novagold Resources Inc. Sec. Litig.*,
629 F. Supp. 2d 272 (S.D.N.Y. 2009) ..........10

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
441 F. Supp. 2d 579 (S.D.N.Y. 2006) ..........3

*In re U.S. West, Inc. Sec. Litig.*,
No. 02-2479, 2003 WL 21246539 (3d Cir. May 30, 2003)..........7

*In re Ultrafem Inc. Sec. Litig.*,
91 F. Supp. 2d 678 (S.D.N.Y. 2000) ..........10

*In re Wash. Mut. Inc. Sec., Derivative & ERISA Litig.*,
Nos. 2:08 *MD-1919 MJP, C08-387 MJP*, 2009 WL 1393679
(W.D. Wash. May 15, 2009) ..........3

*J&R Mktg., SEP v. Gen. Motors Corp.*,
No. 06-10201, 2007 WL 655291 (E.D. Mich. Feb. 27, 2007), *aff'd on other grounds*, 549 F.3d 384 (6th Cir. 2008)..........3

*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*,
32 F.3d 697 (2d Cir. 1994) ..........10

*Kronisch v. United States*,
150 F.3d 112 (2d Cir. 1998), *overruled on other grounds* by
*Rotella v. Wood*, 528 U.S. 549 (2000)..........10

*LC Capital Partners, L.P. v. Frontier Ins. Group*,
318 F.3d 148 (2d Cir. 2003) ..........10

*Lavaggi v. The Republic of Argentina*,
No. 04 Civ. 5068, 2005 WL 2072294 (S.D.N.Y. Aug. 25, 2005)..........3

*Lentel v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005) ..........9

*Lewis v. Casey*,
518 U.S. 343 (1996) ..........4

*Lone Star Fund V, L.P. v. Barclays Bank PLC*,
3:08-cv-0261-L, 2008 WL 4449508 (N.D. Tex. Sept. 30, 2008)..........7

*Luminent Mortgage Cap., Inc. v. Merrill Lynch & Co.*, No. 07-CV-5423,
2009 WL 2590087 (E.D. Pa. Aug. 20, 2009) ..........7

*Olkey v. Hyperion 1999 Term Trust, Inc.*,
98 F.3d 2 (2d Cir. 1996)....................5

*Ong v. Sears, Roebuck & Co.*,
388 F. Supp. 2d 871 (N.D. Ill. 2004)....................3

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
No. 08-10446, 2009 WL 3149775 (D. Mass. Sept. 30, 2009)....................2, 3, 4, 5, 8

*Quantum Overseas, N.V. v. Touche Ross & Co.*,
663 F. Supp. 658, 664 (S.D.N.Y. 1987)....................9

*Shah v. Meeker*,
435 F.3d 244 (2d Cir. 2006)....................9

*Tellabs Inc. v. Makor Issues & Rights Ltd.*,
551 U.S. 308 (2007)....................9

*Valdez v. United States*,
518 F.3d 173 (2d Cir. 2008)....................10

*Westinghouse Elec. Corp. v. '21' Int'l Holdings, Inc.*,
821 F. Supp. 212 (S.D.N.Y. 1993)....................9

## STATUTES AND REGULATIONS

15 U.S.C. § 77k(b)(3)(C) .......... 8

17 C.F.R. § 229.10(c) .......... 7

17 C.F.R. § 229.512(a)(2) .......... 2

17 C.F.R. § 229.1111(a)(3) .......... 6

17 C.F.R. § 230.436(g) .......... 7, 8

## MISCELLANEOUS

Concept Release on Possible Rescission of Rule 436(g) Under the Securities Act of 1933, Release Nos. 33-9071, 34-60798, IC-28943, 74 Fed. Reg. 53114, 53120 (Oct. 15, 2009) .......... 8

SEC Div. of Corp. Fin., Manual of Publicly Available Telephone Interpretations, I.1 .......... 8

Defendants respectfully submit this reply memorandum of law in further support of their Motion to Dismiss the Amended Complaint with prejudice, pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(1) and 12(b)(6).

## I. PRELIMINARY STATEMENT

This is not, as plaintiffs claim, a "class action brought by investors who acquired billions of dollars worth of mortgage backed securities" in 14 different Offerings.[1] Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint, dated Oct. 9, 2009 ("Pls.' Br.") at 1. This is a *putative* class action brought by two investors who collectively bought securities in only two distinct Offerings. The law in this Circuit and others is clear that plaintiffs only have standing to assert claims on behalf of purchasers in those two Offerings. Indeed, a recent District of Massachusetts decision dismissing a nearly identical complaint held that plaintiffs have no standing to assert any claims as to RMBS offerings in which they did not purchase certificates. *See infra* II.A.[2]

Plaintiffs' claims as to the two Offerings in which they did purchase fail because the claims are based entirely on generalized allegations of industry-wide loan origination practices that fail to state a claim with respect to the Offerings at issue. *See infra* II.B. If, however, such allegations had been adequate to state a claim, they would be time-barred. The alleged practices at issue were the subject of widespread media coverage more than one year before plaintiffs brought this action. *See infra* II.C. Plaintiffs' argument that the public information should not

---

1 All defined terms have the same meaning as in the Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint, dated August 14, 2009 ("Defs.' Br."). All references to "Ex. __" are to the accompanying Declaration of Joseph M. Salama, dated November 6, 2009 ("Salama Reply Decl.").

2 On the basis of the representations in footnote 5 of Pls.' Br. and subsequent communications with counsel for plaintiffs, defendants withdraw their argument that the Section 12(a)(2) claims should be dismissed because plaintiffs have not alleged that they purchased securities directly from defendants. For the reasons discussed below, the Section 12(a)(2) claims still must be dismissed with respect to the twelve Offerings in which plaintiffs did not purchase Certificates.

count because it was not specific to the Offerings simply points out the critical flaw in their own claims, which likewise are based on allegations that are not specific to the Offerings. *Id.*[3]

## II. ARGUMENT

### A. Plaintiffs Lack Standing With Respect To Twelve Of The Fourteen Offerings

Plaintiffs purchased Certificates in only two of the fourteen Offerings—Deutsche Alt-A 2006-AR5 and Deutsche Alt-B 2006-AB4. As such, they have no standing to assert claims on behalf of purchasers in the remaining twelve Offerings.

Plaintiffs incorrectly argue that they have standing because the prospectus supplements for each of the 14 Offerings were "incorporated by reference into that [same] Registration Statement." Pls.' Br. at 7 (citing *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1165 (C.D. Cal. 2008)). Pursuant to SEC Regulation S-K Item 512(a)(2), 17 C.F.R. § 229.512(a)(2), each Offering had its own "registration statement" consisting of the common shelf registration statement and the unique prospectus supplement for that Offering. The *Countrywide* decision cited by plaintiffs makes precisely this point. *Id.* *Countrywide* further undermines plaintiffs' argument because it held that there is standing only where "the initial shelf registration statement contained an actionable statement or omission that is common to more than one issuance under the shelf registration." *Id.* Here, the plaintiffs' allegations all concern alleged misstatements and omissions in the unique prospectus supplements for each Offering, not the shelf registration statement shared by the Offerings. *See* Defs.' Br. at 10.

Moreover, this case is identical to *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, No. 08-10446, 2009 WL 3149775, at *1 (D. Mass. Sept. 30, 2009), which rejected the very argument plaintiffs raise here. In *Nomura*, the plaintiffs

---

3 Plaintiffs' claims under Section 15 should be dismissed because plaintiffs have failed to plead adequately claims under Sections 11 and 12, and for the additional reasons set forth in Section III.E of Defs.' Br.

purchased RMBS certificates in two of eight offerings that shared a common shelf registration statement. *Id.* The *Nomura* court, relying in part on decisions from courts in this Circuit, held that plaintiffs lacked both statutory as well as constitutional standing to bring claims on behalf of purchasers in the six offerings in which the plaintiffs themselves did not purchase certificates. *Id.* at *2-*4. Plaintiffs fail to address *Nomura*, and fail to address adequately the cases cited by defendants in their opening brief.[4] Numerous other cases support defendants' argument as well.[5]

Plaintiffs' argument that standing is not addressed appropriately on a motion to dismiss also has been overwhelmingly rejected in this Circuit. *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, No. 08 Civ. 7508, 2009 WL 2828018, at *9 (S.D.N.Y. Sept. 2, 2009) (granting defendants' motion to dismiss all securities claims based upon the securities that no named plaintiff had purchased); *Hoffman* v. *UBS-AG,* 591 F. Supp. 2d 522, 531-32 (S.D.N.Y. 2008) (same); *In re AIG Advisor Group Sec. Litig.*, No. 06-CV-1625, 2007 WL 1213395, at *5 (E.D.N.Y. Apr. 25, 2007) (same); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F.

---

4 Plaintiffs' attempt to distinguish the cases cited by defendants is unavailing. Pls.' Br. at 7 n.3. Each of the cases support the fundamental legal principle that standing exists only for securities purchased by at least one named plaintiff. Defs.' Br. at 10-11; *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 532 (S.D.N.Y. 2008) ("Plaintiffs lack standing for claims relating to [securities] in which they did not personally invest."); *Lavaggi v. The Republic of Argentina*, No. 04 Civ. 5068, 2005 WL 2072294, at *2 (S.D.N.Y. Aug. 25, 2005) ("Plaintiff . . . cannot show that he suffered any damages with respect to the bonds that he does not own."); *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 207 (S.D.N.Y. 2003) ("[A]t least one named plaintiff must be a member of that class—that is, a named plaintiff must have purchased *shares* [of common stock] traceable to the *challenged offering*.") (emphasis added); *Barnes v. Osofsky*, 373 F.2d 269, 273 (2d Cir. 1967) ("[A]n action under § 11 may be maintained 'only by one who comes within a narrow class of persons, i.e. those who purchase securities that are the direct subject of the prospectus and registration statement.") (citation and internal quotation marks omitted).

5 *Ong v. Sears, Roebuck & Co.*, 388 F. Supp. 2d 871, 891-92 (N.D. Ill. 2004) (granting defendants' motion to dismiss securities claims related to offerings in which plaintiffs did not purchase securities although those offerings traced back to the initial shelf registration statement as offerings in which plaintiff did purchase securities); *J&R Mktg., SEP v. Gen. Motors Corp.*, No. 06-10201, 2007 WL 655291, at *4-5 (E.D. Mich. Feb. 27, 2007) (grating defendants' motion to dismiss securities claims related to offerings not purchased by plaintiffs), *aff'd on other grounds*, 549 F.3d 384 (6th Cir. 2008); *In re Wash. Mut. Inc. Sec., Derivative & ERISA Litig.*, Nos. 2:08 MD-1919 MJP, C08-387 MJP, 2009 WL 1393679, at *14 (W.D. Wash. May 15, 2009) (same); *In re Friedman's, Inc. Sec. Litig.*, 385 F. Supp. 2d 1345, 1370-72 (N.D. Ga. 2005) ("That both offerings originated from the same 2001 Shelf Registration Statement is not determinative.").

Supp. 2d 579, 604-08 (S.D.N.Y. 2006) (same); *see also Lewis* v. *Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other unidentified members of [a] class.") (citation and internal quotation marks omitted).[6]

**B. Plaintiffs Fail to Plead Adequately Material Misrepresentations**

**1. Plaintiffs Have Not Alleged Adequately That The Offering Documents Materially Misrepresented The Underlying Loans**

Plaintiffs' Opposition brief paints a far different picture of their claims than the Complaint. The Complaint describes at length lending practices characterized as "questionable," "risky," "lax," and "aggressive." *See, e.g.*, AC ¶¶ 4-5, 58-65, 81, 83, 84, 86, 90-92, 94-95, 117-19, 140, 142, 144, 181, 190, 192. The Complaint alleges that the Offering Documents failed to disclose those practices. *See, e.g.*, *id.* ¶¶ 4-5, 65-79, 92, 95, 144-45, 157-59.

In their Opposition, plaintiffs concede that the Offering Documents disclosed those practices, but now claim that *the full extent* of the alleged conduct was omitted. For example, plaintiffs admit that the Offering Documents disclosed "the existence of loans with little or no documentation or verification of borrowers' incomes." Pls.' Br. at 17; *see also Nomura*, 2009 WL 3149775, at *6 ("Plaintiffs' argument that they were not on notice of the originator's 'soft' underwriting practices begs credulity."). Instead, they claim that that the Offering Documents failed to disclose that lenders "affirmatively encouraged borrowers to overstate income." Pls.' Br. at 17. Similarly, plaintiffs cannot deny that the Offering Documents repeatedly disclosed that lenders issued loans outside of their stated guidelines (Defs.' Br. at 26), but now reframe

---

6 *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318, 2000 U.S. Dist. LEXIS 13469, at*8 (S.D.N.Y. Sept. 20, 2000), the only securities case cited by plaintiffs in support of their argument, has been repeatedly rejected. *See Hoffman*, 591 F. Supp. 2d at 532; *In re Merrill Lynch Inv. Mgmt. Funds Sec.*

their allegation to assert that loans were issued outside the guidelines when no "other compensating factors" were present. Pls.' Br. at 17, 21. Plaintiffs' revised allegations fare no better than the original ones for several reasons.

***First***, plaintiffs have not cured and can not cure the key deficiency in their complaint—namely, the absence of any meaningful, factual allegation that a material number of loans affected by the alleged undisclosed "questionable" practices were included in the two Offerings in which plaintiffs purchased securities. For example, plaintiffs fail to connect the alleged practices concerning inflated appraisals to a material number of loans securitized in the Offerings. Defs.' Br. at III.D.2.b. This failure is fatal. *See Nomura*, 2009 WL 3149775, at *6 ("That questionable appraisal practices were a common problem in the industry as a whole, without more, tells nothing about the Trusts' underlying loans.").

***Second***, given the extensive disclosures contained in the Offering Documents, no reasonable investor could have been misled about the nature of the risks of investing in the Certificates. *See Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 9 (2d Cir. 1996) (dismissing securities law claims based on alleged failure to disclose risk of investing in mortgage-backed securities because "the prospectuses warn investors of exactly the risk the plaintiffs claim was not disclosed"). As the court in *Nomura* found in analyzing nearly identical disclosures to those present in this case, "[t]he offering materials 'abound[] with warnings' of the potential perils." *Nomura*, 2009 WL 3149775, at *6 (citation omitted). Indeed, plaintiffs themselves characterize the disclosed origination practices as "risky" and "aggressive." *See* AC ¶¶ 60, 65, 83, 94, 117, 140, 142, 144, 181. The law is clear that defendants were not required to spell out every possible consequence of the disclosed practices. *In re Donald J. Trump Casino*

---

*Litig.*, 434 F. Supp. 2d 233, 236 n.8 (S.D.N.Y. 2006).

*Sec. Litig.*, 7 F.3d 357, 377 (3d Cir. 1993); *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 612-13 (S.D.N.Y. 2008).

***Third***, plaintiffs have not alleged, as they must, that defendants were aware of any deviations from the disclosed lenders' underwriting guidelines. Defs.' Br. at 27. Although plaintiffs argue that Regulation AB is designed to supplement, not replace, Sections 11 and 12 (a)(2) (Pls.' Br. at 26), plaintiffs miss the point entirely. Regulation AB is the exclusive source of the obligation of an issuer of asset-backed securities to disclose the criteria used to originate the underlying assets. 17 C.F.R. § 229.1111(a)(3). The obligation was created with a limitation, *to wit*, that the criteria must be disclosed only "to the extent known." *Id.* That limitation would be meaningless if liability could be imposed based on the alleged failure to disclose criteria that were not known. *See, e.g.*, *Garber*, 537 F. Supp. 2d at 611 (dismissing Section 11 claims where regulation required disclosure of "known trends" and plaintiffs failed to allege facts showing defendants' knowledge).

***Fourth***, plaintiffs have not alleged that defendants failed to honor their contractual obligation to repurchase loans that did not comply with the relevant representations and warranties. Defs.' Br. at 29-30. Plaintiffs again miss the point by arguing that remedies under the securities laws cannot be contracted away. Pls.' Br. at 33-34. The issue here is not one of remedy, but whether there was any actionable misstatement. The representations in the Offering Documents concerning the securitized loans were never absolute. An inherent element of the representations was that any material breach of a representation with respect to a loan would be cured with a substitution or repurchase of that loan. Thus, in order for plaintiffs to plead an actionable misrepresentation, they had to allege both that the loans were not as represented *and* that defendants did not honor their contractual obligations with respect to such loans. Because

plaintiffs have not made any such allegation, their claims must be dismissed. *See Lone Star Fund V, L.P. v. Barclays Bank PLC*, 3:08-cv-0261-L, 2008 WL 4449508 (N.D. Tex. Sept. 30, 2008); *see also In re U.S. West, Inc. Sec. Litig.*, No. 02-2479, 2003 WL 21246539, at *6 (3d Cir. May 30, 2003) (disclosure of contractual remedy for breach of representation constituted disclosure that representation "was not of unlimited scope").

**2. Plaintiffs Have Failed to Allege Any Misstatement Concerning Credit Ratings**

Plaintiffs are mistaken in their belief that SEC Rule 436(g) of Regulation C, 17 C.F.R. § 230.436(g), does not apply to bar their claims based on the credit ratings. *First*, plaintiffs' argument that the Rule protects the credit rating agencies who issue the ratings but not issuers and underwriters, who have no responsibility for the ratings, is contrary to the plain language of the Rule and makes no sense. The Rule could have been drafted to absolve rating agencies from liability without excluding the ratings from the registration statement, but it was not, and it must be afforded an interpretation consistent with its plain language. *Second*, plaintiffs are incorrect that Rule 436(g) does not apply to RMBS. RMBS are a form of debt securities in which the debt is tied to specific underlying assets that themselves are debt instruments. *See Luminent Mortgage Cap., Inc. v. Merrill Lynch & Co.*, No. 07-CV-5423, 2009 WL 2590087, at *1 (E.D. Pa. Aug. 20, 2009) ("In general, mortgage-backed securities are long-term debt instruments that represent the income stream from a pool of mortgages."). Unlike equity instruments, where the owners enjoy the potential to share in profits, the Certificates entitle their owners to repayments of interest and principal, the hallmarks of a debt instrument.[7]

---

[7] The disclosure in the Offering Documents that Certificate holders have "a *beneficial* ownership interest in the trust fund" (Pls.' Br. at 23 (emphasis added)) is not the same as saying that the Certificate holders have an *actual* ownership interest. Plaintiffs cite no authority to the contrary or otherwise supporting their claim that RMBS are not within the scope of Rule 436(g). On the contrary, Rule 436(g) was promulgated at the same time as Item 10(c) of Regulation S-K, 17 C.F.R. § 229.10(c), which likewise was for the purpose of

Even if Rule 436(g) did not bar plaintiffs' claims, they would fail because plaintiffs have not alleged sufficient facts to show that defendants did not disclose accurately the ratings assigned to the securities or the risk that they change. Defs.' Br. at 32; *Nomura*, 2009 WL 3149775, at *8 (plaintiffs allegations did not "'support the inference' that the ratings were compromised as of the dates . . . when the registration statements and prospectus supplements became effective. Moreover, plaintiffs were duly cautioned that '[t]he security ratings assigned to the Offering Certificates should be evaluated independently from similar ratings on other types of securities. A security rating is not a recommendation to buy, sell or hold securities.'") (internal citations omitted); *see also* Ex. 1, Pro. Supp., 2006-AR5 at LW148; Ex. 2, Pro. Supp., 2006-AB4 at LW107.[8]

### C. Any Viable Claims Would Be Time-Barred

Plaintiffs do not seriously dispute that the information on which plaintiffs rely in support of their claims was publicly available more than one year prior to when they brought this case. Defs.' Br. at 12-18. Instead, plaintiffs argue that the public information failed to "identify any defendant or the Certificates in this action," and "is divorced from the asset-backed securitization context so integral to plaintiffs' claims." Pls.' Br. at 28. However, those arguments simply point out the insufficiency of plaintiffs' own pleading, which is supported entirely by the same type of information. Plaintiffs cannot have it both ways. If the general, non-Offering specific

---

encouraging the inclusion of security ratings in offering documents for "debt securities, convertible debt securities and preferred stock." The SEC has stated in informal guidance that it treats RMBS as being encompassed by Item 10(c). *See* SEC Div. of Corp. Fin., Manual of Publicly Available Telephone Interpretations, I.1 (available at http://www.sec.gov/interps/telephone/cftelinterps_regs-k.pdf). Thus, it is logical that 436(g) likewise covers RMBS. Similarly, in its recent consideration of whether to repeal Rule 436(g), the SEC expressed concern about the implications of doing so on asset-backed securities. Concept Release on Possible Rescission of Rule 436(g) Under the Securities Act of 1933, Release Nos. 33-9071, 34-60798, IC-28943, 74 Fed. Reg. 53114, 53120 (Oct. 15, 2009).

8 Plaintiffs also ignore that, if they were included in the Registration Statements, the credit ratings constitute an "expertised" portion upon which defendants were entitled to rely. *See* 15 U.S.C. § 77k(b)(3)(C); Defs.' Br. at 32 n.31.

information is sufficient to state a claim (which defendants dispute), plaintiffs' notice of that information more than a year prior to bringing suit bars their claims. Plaintiffs argue that *defendants* cannot have it both ways. Pls.' Br. at 28-29. However, defendants do not need it both ways. Either reason is sufficient to dismiss plaintiffs' claims.

Plaintiffs claim that a gap between the inquiry notice standard and the pleading standard under Rule 8(a) allows them to have it both ways. Pls.' Br. at 29 n.28. Specifically, they assert that Rule 8(a) requires that they plead only enough facts for their claims to be "plausible," but that they were not on inquiry notice until there was "evidence of storm warnings [] such that they would apprise a person of reasonable intelligence that the wrongdoing and legal claims which form the basis of plaintiffs' suit were 'probable, not merely possible.'" Pls.' Br. at 27 (quoting *Shah v. Meeker*, 435 F.3d 244, 249 (2d Cir. 2006)). However, plaintiffs offer no explanation as to why or how the allegations of conduct that are not specific to the Offerings at issue fall within this supposed gap. Moreover, plaintiffs offer no authority for the novel proposition that they could have possessed all the ingredients for a well-pled complaint without the clock starting to tick for statute of limitations purposes. *See In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 381 (S.D.N.Y. 2003) ("It is inconsistent for plaintiffs to argue, on the one hand, that the dramatically reversed financial data . . . shows that the previous statements were false and misleading, but on the other hand, that it could not have placed plaintiff on inquiry notice of the fraud.") (citations and internal quotation marks omitted).[9]

---

9 The purported discrepancy between the inquiry notice standard and the pleading standard exists only because the inquiry notice cases cited by plaintiff all included claims of fraud, which carry a higher pleading standard. Pls.' Br. at 27; *see also Tellabs Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 314 (2007) (inference of fraud from allegations "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."); *Lentel v. Merrill Lynch & Co.*, 396 F.3d 161, 168 (2d Cir. 2005) (discussing nexus between strict pleading requirements for securities fraud and corresponding standard for inquiry notice). In non-fraud contexts, the general inquiry notice standard is whether there were "'sufficient storm warnings to alert a reasonable person to the *possibility* that there were either misleading statements or significant omissions.'" *Quantum Overseas,*

Plaintiffs also claim that the ratings on the Certificates provided reassurance that "absolutely disquieted any concerns about the underlying collateral." Pls.' Br. at 31. However, the ratings were not statements by defendants. *See supra* p. 8. In addition, the ratings do not specifically address the issues raised in the public reports. *See In re MBIA Inc. Sec. Litig.*, No. 05 Civ. 03514, 2007 WL 473708, at *8 (S.D.N.Y. Feb. 14, 2007) (rejecting alleged "reassuring" statement because "[defendant's] release did not . . . address the particular concerns raised by [a research report]"); *LC Capital Partners, LP v. Frontier Ins. Group, Inc.*, 318 F.3d 148, 155 (2d Cir. 2003) ("[R]eassuring statements will prevent the emergence of a duty to inquire or dissipate such a duty only if an investor of ordinary intelligence would reasonably rely on the statements to allay the investor's concern."). Finally, plaintiffs were on inquiry notice concerning their allegations relating to the ratings on the Certificates. Defs.' Br. at 17-18. Therefore, they cannot rely on those ratings as an excuse for not conducting a reasonable inquiry.

## III. CONCLUSION

The Amended Complaint should be dismissed with prejudice.

---

*N.V. v. Touche Ross & Co.*, 663 F. Supp. 658, 664 (S.D.N.Y. 1987) (dismissing Securities Act claims) (citation omitted) (emphasis added); *see also Brin v. S.E.W. Investors*, 902 A.2d 784, 794 (D.C. Ct. App. 2006) (considering "what facts are sufficient to trigger the obligation to make a reasonable investigation into the possible existence of a cause of action"); *Valdez v. United States*, 518 F.3d 173, 178 (2d Cir. 2008) (citation omitted); *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998), *overruled on other grounds* by *Rotella v. Wood*, 528 U.S. 549 (2000). In *Westinghouse Electric Corp. v. '21' International Holdings, Inc.*, 821 F. Supp. 212, 222 n.6 (S.D.N.Y. 1993), the court considered the appropriate standard for inquiry notice for Securities Act claims, noting that "[t]he cases cited by [plaintiff] employing a standard of probability rather than possibility . . . all involve claims under § 10(b) and Rule 10b-5, which by their nature require a heightened specificity of pleading and so extend the commencement of the limitations period appropriately," but ultimately did not decide the issue because the plaintiff's claims were untimely even under the more stringent "probability" test. *Id.* (internal citations omitted). Courts that have applied the "probability" standard to Section 11 and 12 claims have done so either when the claims sounded in fraud or by relying on authority that considered the issue in the fraud context without addressing the distinction between fraud- and non-fraud-based claims. *See, e.g., In re Ultrafem Inc. Sec. Litig.*, 91 F. Supp. 2d 678, 692 (S.D.N.Y. 2000); *In re Novagold Resources Inc. Sec. Litig.*, 629 F. Supp. 2d 272, 285 (S.D.N.Y. 2009); *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 701 (2d Cir. 1994).

Dated: November 6, 2009

Respectfully submitted:

LATHAM & WATKINS LLP

By: ______________________________

Richard D. Owens (RO-4070)
Jamie L. Wine (JW-6412)
Joseph M. Salama (JS-2213)
885 Third Avenue
Suite 1000
New York, NY 10022
(212) 906-1200

*Attorneys for Defendants Deutsche Alt-A Securities, Inc., Deutsche Bank Securities, Inc., DB Structured Products, Inc. Anilesh Ahuja, Jeffrey Lehocky, Richard W. Ferguson, Joseph J. Rice and Richard D'Albert*