UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————— x

MASSACHUSETTS BRICKLAYERS AND
MASONS TRUST FUNDS, Individually and
On Behalf of All Others Similarly Situated,

                       Plaintiff,

       vs.

DEUTSCHE ALT-A SECURITIES, INC., et
al.,

                     Defendants.

————————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 2:08-cv-03178-LDW-ARL

<u>CLASS ACTION</u>

LEAD PLAINTIFFS' MEMORANDUM
OF LAW IN SUPPORT OF UNOPPOSED
MOTION FOR: (I) PRELIMINARY
APPROVAL OF SETTLEMENT,
(II) CERTIFICATION OF THE CLASS
FOR PURPOSES OF SETTLEMENT,
(III) APPROVAL OF NOTICE TO THE
CLASS, AND (IV) SCHEDULING OF A
FINAL APPROVAL HEARING

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ................................................................................................... 1

BACKGROUND OF THE LITIGATION................................................................... 3

ARGUMENT .......................................................................................................... 7

I.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL............... 7

      A.    The Proposed Settlement Is the Result of Well Grounded, Good Faith,
            Arm's-Length Negotiations ................................................................... 9

      B.    The Proposed Settlement Falls Within the Range of Reasonableness and
            Merits Issuance of Notice and a Hearing on Final Approval...................... 10

      C.    The Settlement Has No Obvious Deficiencies............................................ 12

II.   CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT
      PURPOSES IS APPROPRIATE ...................................................................... 13

      A.    The Settlement Class Satisfies the Requirements of Rule 23(a)................... 14

            1.    The Settlement Class Members Are Too Numerous to Be Joined....... 15

            2.    There Are Common Questions of Law and Fact ............................... 16

            3.    The Class Representatives' Claims Are Typical of Those of the
                  Settlement Class....................................................................... 17

            4.    The Class Representatives Will Fairly and Adequately Protect the
                  Interest of the Settlement Class................................................... 18

      B.    The Class Representatives' Claims Satisfy the Prerequisites of Rule
            23(b)(3) ............................................................................................ 20

            1.    Common Legal and Factual Questions Predominate ......................... 20

            2.    A Class Action is Superior to Other Methods of Adjudication ............ 21

III.  NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED .......................... 22

CONCLUSION...................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

**Page(s)**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .......................................................................................... *passim*

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999) ....................................................................20, 22

*Cent. States Se. & Sw. Areas Health & Welfare Fund v.*
    *Merck-Medco Managed Care, LLC*,
    504 F.3d 229 (2d Cir. 2007) ....................................................................................15

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ......................................................................................8

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) ......................................................................................15

*In re Currency Conversion Fee Antitrust Litig.*,
    No. 01 MDL 1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) .............................7

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) ...........................................................................9

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ....................................................................................14

*In re Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992) ....................................................................................18

*In re Dynex Capital, Inc. Sec. Litig.*,
    No. 05 Civ. 1897, 2011 WL 781215 (S.D.N.Y. Mar. 7, 2011)................................17

*In re Globalstar Sec. Litig.*,
    No. 01 Civ. 1745, 2004 WL 2754674 (S.D.N.Y. Dec. 1, 2004)..............................16

*Hicks v. Morgan Stanley & Co.*,
    No. 01 Civ. 10071, 2003 WL 21672085 (S.D.N.Y. July 16, 2003).........................19

*In re Initial Pub. Offering Sec. Litig.*,
    226 F.R.D. 186 (S.D.N.Y. 2005) ..............................................................................8

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) .................................................................8, 16, 20

*Katz v. Image Innovations Holdings, Inc.*
   No. 06 Civ. 3707, 2010 WL 2926196 (S.D.N.Y. July 22, 2010)...............................18

*Lapin v. Goldman Sachs & Co.*,
   254 F.R.D. 168 (S.D.N.Y. 2008) ..............................................................................15

*Leung v. Home Boy Rest. Inc.*,
   No. 07 Civ. 8779, 2009 WL 398861(S.D.N.Y. Feb. 18, 2009) ..................................9

*In re Marsh & McLennan Cos. Sec. Litig.*,
   No. 04 Civ. 8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)....................7, 14, 18, 20, 22

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   No. 02 MDL 1484, 2007 WL 4526593 (S.D.N.Y. Dec. 20, 2007)............................11

*In re Monster Worldwide, Inc. Sec. Litig.*,
   251 F.R.D. 132 (S.D.N.Y. 2008) .........................................................................18, 22

*Moore v. Paine Webber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002)....................................................................................20

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ..............................................................................7, 8

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
   No. 08 civ. 5653, 2011 U.S. Dist. LEXIS 92597 (S.D.N.Y. Aug. 16, 2011) ...........11

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
   272 F.R.D.160 (S.D.N.Y. 2011) ...............................................................................11

*In re Oxford Health Plans, Inc., Sec. Litig.*,
   191 F.R.D. 369 (S.D.N.Y. 2000) .................................................................16, 17, 18

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
   658 F. Supp. 2d 299 (D. Mass. 2009) .......................................................................11

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) ................................................................................18

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ...............................................................7, 8, 12, 14

*Pub. Employees' Ret. Sys. of Miss., et al. v. Merrill Lynch & Co., Inc. et al.*,
   No. 08-cv-10841 2011 U.S. Dist. LEXIS 93222 (S.D.N.Y. Aug. 22, 2011)............10

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993).................................................................................15, 17

iii

*Robinson v. Metro-N. Commuter R.R. Co.,*
    267 F.3d 147 (2d Cir. 2001)................................................................16

*Teachers' Ret. Sys. of La. v. ACLN Ltd.,*
    No. 01 Civ. 11814, 2004 WL 2997957 (S.D.N.Y. December 27, 2004)................................13

*Torres v. Gristede's Operating Corp.,*
    No. 04-cv-3316, 2010 WL 2572937 (S.D.N.Y. June 1, 2010) ..................................7

*In re Vivendi Sec. Litig.,*
    242 F.R.D. 76 (S.D.N.Y. 2007) ........................................................17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005)...........................................................7, 9, 25

*In re Warner Chilcott Ltd. Sec. Litig.,*
    No. 06 Civ. 11515, 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) .........................25

*Weinberger v. Kendrich,*
    698 F.2d 61 (2d Cir. 1982)............................................................13

*In re WorldCom, Inc. Sec. Litig.,*
    219 F.R.D. 267 (S.D.N.Y. 2003) ......................................................19

**STATUTES**

Fed. R. Civ. P. 23(a) ............................................................... *passim*

Fed. R. Civ. P. 23(b).................................................................*passim*

Fed. R. Civ. P. 23(e)(1)..................................................................22

Fed. R. Civ. P. 23(h)(1)..................................................................23

15 U.S.C. § 77k...........................................................................4

15 U.S.C. §77z-1(a)(3)(B) .........................................................4, 19, 23

15 U.S.C. §77z-1(a)(4).....................................................................23

15 U.S.C. §77l(b) .........................................................................12

iv

Lead Plaintiffs the Massachusetts Bricklayers and Mason Trust Funds and the Pipefitters' Retirement Fund Local 597 (collectively, "Lead Plaintiffs")[1] respectfully submit this memorandum of law in support of their unopposed motion for: (i) preliminary approval of the settlement ("Settlement") of this securities class action (the "Litigation") against the Defendants;[2] (ii) certification of the proposed Settlement Class for purposes of the Settlement; (iii) approval of the form and manner of notice to putative Settlement Class Members; and (iv) the scheduling of a hearing (the "Final Approval Hearing") for final approval of the Settlement, the Plan of Allocation that will govern how Settlement Class Members' claims are calculated and the Net Settlement Fund is distributed, and Lead Counsel's motion for an award of attorneys' fees and litigation expenses.

## INTRODUCTION

Lead Plaintiffs and Defendants have reached an agreement to settle this securities class action on the terms set forth in the Stipulation.  The proposed Settlement will provide a substantial monetary benefit to the Settlement Class of $32.5 million in cash.  The Settlement, if approved, will resolve all claims asserted against the Defendants in the Litigation.

The Settlement was reached at a time when the Settling Parties understood the strengths and weaknesses of their respective positions.  Specifically, Lead Plaintiffs and Lead Counsel conducted an extensive investigation of the facts, filed two consolidated complaints, opposed two rounds of motions to dismiss, fully briefed a motion for class certification, and undertook

---

[1] All capitalized terms not otherwise defined herein have the same meanings as in the Stipulation of Settlement (the "Stipulation"), dated as of March 15, 2012.  The Stipulation is submitted as Ex. 1 to the Declaration of Jonathan Gardner, dated March 22, 2012 ("Gardner Decl.").

[2] The Defendants are Deutsche Alt-A Securities, Inc. ("Deutsche Alt-A"), Deutsche Bank Securities Inc. ("DBSI"), DB Structured Products, Inc. ("DBSP"), Anilesh Ahuja ("Ahuja"), Jeffrey Lehocky ("Lehocky"), Richard W. Ferguson ("Ferguson"), Joseph J. Rice ("Rice"), and Richard D'Albert ("D'Albert").  Ahuja, Lehocky, Ferguson, Rice and D'Albert are referred to collectively as the "Individual Defendants."

significant fact discovery, including the filing and opposing of several motions to compel, and the review and analysis of several million pages of documents.  In addition, Defendants deposed each of the Lead Plaintiffs, their investment managers and class certification expert and Lead Counsel deposed Defendants' expert proffered in opposition to class certification.   Lead Plaintiffs also worked closely with several expert witnesses in analyzing the factual record and the damages allegedly suffered by the Settlement Class.

At the time merits depositions were about to begin, the Settling Parties engaged in extensive arm's-length settlement negotiations and participated in a full-day, in-person mediation before former United States District Judge Layn R. Phillips (Ret.), an experienced and highly respected mediator.  The mediator's recommendation ultimately resulted in this Settlement. Lead Plaintiffs and Lead Counsel – based upon their evaluation of the facts and applicable law and their recognition of the substantial risk and expense of continued litigation – submit that the proposed Settlement is in the best interests of the Settlement Class and will provide an immediate meaningful recovery.

Prior to the Final Approval Hearing Lead Plaintiffs will submit detailed papers supporting the proposed Settlement and will ask the Court to determine whether the Settlement is fair, reasonable and adequate.  At this time, however, Lead Plaintiffs request only that the Court grant preliminary approval of the Settlement so that notice of it may be provided to the Settlement Class.  Specifically, Lead Plaintiffs request that the Court enter the proposed Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order"), submitted herewith (and as Ex. A to the Stipulation), which, *inter alia*, will:

    (i)       Preliminarily approve the Settlement and certify the Settlement Class;

    (ii)      Approve the form and content of the Notice, Proof of Claim form and Summary Notice, attached as Exhibits A-1, A-2 and A-3 to the Stipulation, respectively; and

     (iii)    Schedule the Final Approval Hearing and set a schedule and procedures for settlement-related events: disseminating the notices; requesting exclusion; objecting to the Settlement; and submitting papers in support of final approval of the Settlement.

In short, Lead Plaintiffs respectfully submit that the Settlement is not only fair, reasonable and adequate, but represents an outstanding recovery, as described below and as will be demonstrated in connection with seeking final approval of the Settlement.

## BACKGROUND OF THE LITIGATION

On May 1, 2006, defendant Deutsche Alt-A filed a Registration Statement with the Securities and Exchange Commission ("SEC") in connection with and for the purpose of issuing billions of dollars of mortgage pass-through certificates.  Deutsche Alt-A, a subsidiary of defendant DBSP, was set up to acquire mortgage loans from mortgage originators such as American Home Mortgage Corp. ("AHM"), IndyMac Bank, F.S.B. ("IndyMac"), and GreenPoint Mortgage Funding, Inc. ("GreenPoint").  Deutsche Alt-A would then transfer the mortgages it acquired to a series of New York common law trusts created for the sole purpose of issuing the certificates.  The certificates were then sold to investors pursuant to a single Registration Statement and 14 Prospectus Supplements (collectively "Offering Documents"). The Offering Documents emphasized the purported stringent underwriting standards utilized to originate the underlying mortgage loans purchased by Deutsche Alt-A.

The Litigation was initiated on June 27, 2008, when Massachusetts Bricklayers and Masons Trust Funds ("Mass. Bricklayers") filed a class action against the Defendants in the Supreme Court of the State of New York, County of Nassau.  On August 5, 2008, Defendants removed the Litigation to the United States District Court for the Eastern District of New York. On October 2, 2008, Mass. Bricklayers moved to remand the Litigation.  That motion was denied on January 8, 2009.  On May 18, 2009, the Court appointed Mass. Bricklayers along with the

Pipefitters' Retirement Fund Local 597 as Lead Plaintiffs pursuant to Section 27 of the Securities Act, 15 U.S.C. §77z-1(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and approved Lead Plaintiffs' selection of Robbins Geller Rudman & Dowd, LLP (then Coughlin Stoia Geller Rudman LLP) and Labaton Sucharow as Lead Counsel.

On June 18, 2009, Lead Plaintiffs filed an Amended Complaint for Violation of §§11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77l, and 77o.  The amended complaint continued to assert claims related to all fourteen (14) offerings issued pursuant to the Offering Documents, and alleged that the Defendants made material misstatements and omissions in the Offering Documents regarding the underwriting and appraisal practices employed by the originators of the loans underlying the certificates.  It further alleged that the loan-to-value ("LTV") ratio of the loans, which were contained in the Offering Documents, were understated, and that the credit ratings assigned to the certificates, also included in the Offering Documents, were false and understated the true level of risk associated with the certificates.  The amended complaint alleged that the true quality of the loans underlying the certificates inevitably led to loan defaults and a corresponding collapse in the value of the certificates purchased by investors.

Defendants moved to dismiss the amended complaint, which the Court granted in part on April 6, 2010, dismissing claims on behalf of twelve of the fourteen trusts in which the Lead Plaintiffs did not purchase.  The Court, however, sustained the claims of investors who acquired certificates in the two trusts that Lead Plaintiffs did purchase: Deutsche Alt-B Securities Mortgage Loan Trust, Series 2006-AB4 and the Deutsche Alt-A Securities Mortgage Loan Trust, Series 2006-AR5, and granted Lead Plaintiffs leave to file a second amended complaint.

The operative complaint in the Litigation is the Second Amended Complaint for Violation of §§11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Complaint"), filed on May 24, 2010.  The Complaint alleges violations of §§11, 12(a)(2) and 15 of the Securities Act on behalf of a class of all Persons who purchased or otherwise acquired Deutsche Alt-B Securities Mortgage Loan Trust 2006-AB4 Mortgage Pass-Through Certificates and/or Deutsche Alt-A Securities Mortgage Loan Trust 2006-AR5 Mortgage Pass-Through Certificates during the period between May 1, 2006 through May 30, 2007, inclusive (the "Relevant Time Period").

On July 9, 2010, Defendants moved to dismiss the Complaint, and on December 23, 2010 the  motion was denied.  Discovery commenced thereafter and included the production of over four (4) million pages of documents by parties and third parties.  On October 10, 2011, Lead Plaintiffs moved for class certification, and the depositions of the Lead Plaintiffs and their investment managers, as well as the class certification experts retained by Lead Plaintiffs and Defendants were taken.  The motion for certification was fully briefed and was pending when the Court denied the motion without prejudice to renew, pending the results of a mediation scheduled between the Settling Parties.

Prior to the Settlement, Lead Plaintiffs, through Lead Counsel, conducted an in-depth investigation of the claims and underlying events relating to the Litigation.  This investigation included, among other things, a review and analysis of: (i) millions of pages of documents produced during discovery; (ii) publicly available information concerning the Defendants, including newspaper articles and online publications; (iii)  documentation for loans backing the trusts, including information from the borrowers, which had been made publicly available pursuant to bankruptcy proceedings or other records; (iv) regulatory filings made by the Defendants with the SEC, including the Registration Statement and Prospectus; and (v)

governmental agency reports.  Lead Plaintiffs also consulted with due diligence/underwriting, statistical, and damages experts to analyze this information.

On November 18, 2011, the Settling Parties participated in a full-day mediation regarding potential settlement of the Litigation facilitated by Judge Phillips.  In connection with the mediation process, the Lead Plaintiffs exchanged extensive mediation statements and reply mediation statements with defendants, and engaged in arm's-length negotiations with respect to a potential compromise and settlement of the Litigation, with a view to achieving the best relief possible for the Settlement Class.  The Settling Parties were unable to reach agreement on settlement at the conclusion of the mediation session.  However, following the session, Judge Phillips submitted a mediator's recommendation of $32.5 million in cash, which was accepted by the Settling Parties.  Based upon their investigations and the mediation, Lead Plaintiffs believe that the terms and conditions of this Settlement are fair, reasonable and adequate.

Following the agreement in principle, the Settling Parties negotiated the Stipulation.  Given the extensive discovery conducted prior to when the Stipulation was executed, Lead Plaintiffs and Lead Counsel had a thorough understanding of the strengths and weaknesses of Lead Plaintiffs' claims and the Defendants' potential defenses.  In light of: (i) the Settlement's substantial benefits ($32.5 million for the benefit of the Settlement Class); (ii) the cost and risks of continuing the litigation against the Defendants through trial and possible appeals; (iii) the arm's-length negotiations that occurred between the Settling Parties, with the assistance of an experienced mediator; and (iv) the approval of the Settlement by the Court-appointed Lead Plaintiffs, it is respectfully submitted that the Settlement warrants the Court's preliminary approval in order that notice can be provided to the Settlement Class.

## ARGUMENT

## I.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) requires judicial approval for any compromise of claims brought on a class basis.  Approval of a proposed settlement is within the Court's discretion, to be exercised in accordance with public policy that strongly favors pretrial settlement of complex class action lawsuits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.  The compromise of complex litigation is encouraged by the courts and favored by public policy."); *In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

The Court "must determine whether the terms of the proposed settlement warrant preliminary approval [by] mak[ing] 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate."  *In re Currency Conversion Fee Antitrust Litig.*, MDL Nos. 1409, M 21-95, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006); *see also Wal-Mart Stores,* 396 F.3d at 116; *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *see also Torres v. Gristede's Operating Corp.*, No. 04-cv-3316 (PAC), 2010 WL 2572937, *2 (S.D.N.Y. June 1, 2010) ("[p]reliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties" [and] "[t]o grant preliminary approval, the court need only find that there is 'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness.'").

"Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a 'fairness hearing.'  First, the court reviews the proposed terms of

settlement and makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005).  During this first step, a court must consider whether the settlement warrants preliminary approval, such that notice of the settlement should be sent to the proposed class and a fairness hearing held.  In the second step, after notice of the proposed settlement has been provided to the class and a hearing has been held to consider the fairness and adequacy of the proposed settlement, the Court considers whether the settlement warrants "final approval." *Id.*[3]    As explained by Judge Robert Sweet:

> In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice.  Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.  Once preliminary approval is bestowed, the second step of the process ensues. . . .

*In re NASDAQ,* 176 F.R.D. at 102; *see also, In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

In essence, the Court should determine whether the settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *In re NASDAQ*, 176 F.R.D. at 102 ; *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("The Court's function now is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.")

---

[3] A final approval determination is based on an analysis of nine factors established in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of the attendant risks of litigation.  *Id.*

A.    The Proposed Settlement Is the Result of Well
      Grounded, Good Faith, Arm's-Length Negotiations

A presumption of fairness applies to a proposed class settlement when the settlement is the product of arm's-length negotiations conducted by experienced counsel knowledgeable in complex class litigation.  *Wal-Mart Stores,* 396 F.3d at 116; *see also Leung v. Home Boy Rest. Inc.,* No. 07 Civ. 8779 (RJS) (DFE), 2009 WL 398861, *1 (S.D.N.Y. Feb.18, 2009) (preliminary approval appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties . . .") Here, the Settlement is the product of such rigorous negotiations.  The Settling Parties took part in back-and-forth negotiations, and a full-day mediation before Judge Phillips, a mediator with extensive experience who has assisted in numerous other complex class action mediations, including other mortgage-backed securities actions.  *See, e.g. In re Wells Fargo Mortg-Backed Certificates Litig.,* No. 09-CV-1376-LHK (PSG) (N.D. Cal. Nov. 14, 2011); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.,* 248 F.R.D. 483, 498 (E.D. Mich. 2008) (speaking of Judge Phillips, "the Court and the parties have had the added benefit of the insight and considerable talents of a former federal judge who is one of the most prominent and highly skilled mediators of complex actions, who acted as Special Master in the settlement negotiations.")

Lead Counsel's independent investigation into the facts and merits of the claims and defenses further supports a finding that the process leading to the proposed Settlement was thorough and well-informed.  Lead Counsel did an extensive review of publicly available information concerning the Defendants and the claims asserted, including newspaper articles, online publications, documentation for loans backing the trusts provided in bankruptcy proceedings, SEC filings and governmental agency reports, including those from the Financial Crisis Inquiry Committee ("FCIC").  Lead Counsel thoroughly researched Lead Plaintiffs' legal

claims, filed two consolidated complaints, opposed two rounds of motions to dismiss, moved for class certification, undertook significant fact and class discovery, including the review and analysis of millions of pages of documents and several depositions, and consulted with due diligence/underwriting, statistical, and damages experts.  Thus, Lead Counsel and Lead Plaintiffs had a clear and well-developed understanding of the strengths and weaknesses of their case before entering into negotiations and agreeing to the proposed Settlement.

**B.     The Proposed Settlement Falls Within the Range of Reasonableness and Merits Issuance of Notice and a Hearing on Final Approval**

The proposed $32.5 million Settlement is well within the range of reasonableness. Indeed, based on the total initial face dollar value of the Certificates as stated in the Offering Documents, pursuant to which the Certificates were sold (without subtracting the principal pay-downs received on the Certificates), and assuming claims are submitted for 100% of the eligible Certificates, the estimated average recovery is $12.80 per $1,000 in initial certificate value of the Certificates, an excellent recovery for the Settlement Class.  This is especially true when compared to the estimated recoveries in other recent mortgage-backed securities litigation.  For example, on November 14, 2011, the court in the *In re Wells Fargo Mortg.-Backed Certificates Litig.*, No. 09-CV-1376-LHK (PSG) (N.D. Cal. Nov. 14, 2011), gave final approval of a settlement in a similar mortgage-backed securities action where plaintiffs estimated recovery was $2.70 per $1,000 in initial certificate value before any award of attorneys' fees or expenses. Likewise, on December 14, 2011, Judge Rakoff preliminarily approved a settlement in a mortgage-backed securities case like this one where plaintiffs' estimated recovery was $19.05 per $1,000 in initial certificate value before any award of attorneys' fees or expenses in the matter of *Pub. Employees' Ret. Sys. of Miss., et al. v. Merrill Lynch & Co., Inc. et al.*, No. 08-cv-10841-JSR-JLC, 2011 U.S. Dist. LEXIS 93222 (S.D.N.Y. Aug. 22, 2011).

Although Lead Plaintiffs and Lead Counsel believe that the claims asserted in the Litigation are meritorious and that the Settlement Class would ultimately prevail at trial, continued litigation against Defendants posed significant risks that made any recovery for the Settlement Class uncertain.  The fairness and adequacy of the Settlement is underscored by considering the obstacles the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the Litigation.  *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 4526593, *10 (S.D.N.Y. Dec. 20, 2007).

Here, Lead Counsel and Lead Plaintiffs appreciated the unique and significant risks inherent in the Litigation.  At the time of the initial filing, there was little established precedent for mortgage-backed securities litigation, and no court had sustained claims under the federal securities laws for purchasers of mortgage-backed securities.  The limited authority was adverse to plaintiffs.  *See Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299 (D. Mass. 2009) (dismissing claims) subsequently *rev'd in part*, 632 F.3d 762 (1st Cir. 2011).   Likewise, no court at that time had certified a mortgage-backed securities class or accepted plaintiffs' damages theories arising from such claims.  *See N.J. Carpenters Health Fund v. Residential Capital, LLC*, 272 F.R.D. 160 (S.D.N.Y. 2011) (denying class certification).[4]

 If the Litigation had continued, Lead Plaintiffs faced substantial challenges to establishing that Defendants made untrue statements and omissions in the Offering Documents in

---

[4] More recently, two courts within this Circuit have certified classes in mortgage-backed certificate cases at the trust level.  *See, Public Employees Ret. Sys. Of Miss. V. Merrill Lynch & Co.*, No. 08 Civ. 10841 (JSR), 2011 U.S. Dist. LEXIS 93222 (S.D.N.Y. Aug. 22, 2011); *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 civ. 5653 (PAC), 2011 U.S. Dist. LEXIS 92597 (S.D.N.Y. Aug. 16, 2011).

violation of the Securities Act.  Even assuming that Lead Plaintiffs prevailed on the liability issues at trial, Defendants would still have the opportunity to persuade the Court, or the jury, that the statutory damages pursuant to §11 should be reduced or eliminated because a portion, or all, of the losses were attributable to causes other than the misstatements or omissions.  *See* 15 U.S.C. §77l(b) (defendants may assert affirmative defense of loss causation).  As Defendants argued in opposing class certification, they would attempt to prove that that the overall national economic downturn, housing price declines and reduced liquidity, not the alleged untrue statements and omissions, were to blame for any decline in the Certificates' value.  There is no doubt that both sides would have to present complex and nuanced information to a jury that would include a "battle of the experts" on the arcana of damages calculations and securities disclosure requirements.

When considering the Settlement, Lead Counsel weighed the certainty of an immediate cash recovery for the Settlement Class against the significant legal challenges Lead Plaintiffs faced.  Under these circumstances, the proposed Settlement is fair, reasonable and adequate.

### C.    The Settlement Has No Obvious Deficiencies

There are no "grounds to doubt [the Settlement's] fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys . . ."  *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).  Lead Plaintiffs, like all other Settlement Class Members, will receive their *pro rata* distribution from the Net Settlement Fund in accordance with a Plan of Allocation that will be presented to the Court for approval.  The matter of attorneys' fees and payment of expenses is wholly separate from the Settlement and subject to the Court's oversight and approval.

Accordingly, nothing in the course of this Litigation, the settlement negotiations or the Settlement itself raises fairness concerns.   Lead Plaintiffs therefore request that the Court preliminarily approve the Settlement and set a hearing date for consideration of final approval of the Settlement.

## II.    CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

In granting preliminary settlement approval, the Court should also certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.   The proposed Settlement Class consists of:

> All Persons who purchased or otherwise acquired Deutsche Alt-B Securities Mortgage Loan Trust 2006-AB4 Mortgage Pass-Through Certificates and/or Deutsche Alt-A Securities Mortgage Loan Trust 2006-AR5 Mortgage Pass-Through Certificates during the Relevant Time Period and who were damaged thereby.   Excluded from the Settlement Class are: the Defendants, IndyMac Bank, F.S.B., GreenPoint Mortgage Funding, Inc., American Home Mortgage, Dexia SA/NV, Dexia Holdings, Inc., FSA Asset Management LLC, Dexia Credit Local SA, Massachusetts Mutual Life Insurance Company, Federal Home Loan Bank of Boston, and Teachers Insurance and Annuity Association of America; the officers, directors, successors and assigns of Deutsche Alt-A, DBSI, DBSP, IndyMac Bank, F.S.B., GreenPoint Mortgage Funding, Inc., American Home Mortgage Corp., Dexia SA/NV, Dexia Holdings, Inc., FSA Asset Management LLC, Dexia Credit Local SA, Massachusetts Mutual Life Insurance Company, Federal Home Loan Bank of Boston, and Teachers Insurance and Annuity Association of America; members of the immediate families, the legal representatives, heirs, successors or assigns of the Individual Defendants; any entity in which any excluded Person has or had a controlling interest; and any Person who timely and validly seeks exclusion from the Settlement Class.

Stipulation ¶ 1.33.[5]

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement.   *See Weinberger v. Kendrich*, 698 F.2d 61, 73 (2d Cir.

---

[5] This definition is materially the same as the definition of the Settlement Class in Lead Plaintiffs' Memorandum of Law in Support of Motion for Class Certification, at 1, filed on October 10, 2011 ("Class Certification Brief," D.E. #118.), but has been edited to be consistent with the terms as defined in the Stipulation.

1982); *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009).  Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Prudential*, 163 F.R.D. at 205.  "[S]ettlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under the scrutiny of the trial judge." *Id.* (quoting *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 174 (5th Cir. 1979)).

A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and (b).  *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).  Nevertheless, the manageability concerns of Rule 23(b)(3) are not at issue in a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems… is not a consideration when settlement-only certification is requested.").  Here, the proposed Settlement Class meets all the requirements of Rule 23, there is no abuse of the class action device, and the settlement is fair, reasonable and subject to the Court's approval.

As explained *infra*, certification is appropriate because the proposed Settlement Class meets all the requirements of Rule 23(a) and Rule 23(b)(3).

### A.    The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

### 1.      The Settlement Class Members Are Too Numerous to Be Joined

Certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable."  Fed. R. Civ. P. 23(a).  "Impracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), but "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007).  Numerosity is presumed when a class consists of forty members or more.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, based on a very conservative method of identifying Settlement Class Members from information reviewed in discovery, there are at least 310 unique investors who purchased or otherwise acquired the Certificates during the Relevant Time Period.  Indeed, each trust had well over 40 distinct investors during the relevant time period – Lead Plaintiffs' expert estimates that the 2006-AB4 Offering had at least 250 unique investors and the 2006-AR5 Offering had at least 60 investors.  Mason Report ¶91, Ex. B to the Leahy Decl., D.E. #118-1.  Thus the Settlement Class is sufficiently numerous that joinder of all members would be impracticable, and accordingly satisfies Rule 23(a)(1).  *See id.* at 483; *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 175 (S.D.N.Y. 2008) (class of shareholders numbering in hundreds or thousands satisfied the numerosity requirement).

Moreover, certification will promote judicial economy and uniformity of decision by concentrating these numerous claims into a single class action.  *See Robidoux*, 987 F.2d at 936 ("Consolidating in a class action what could be over 100 individual suits serves judicial economy.").  Additionally, the Members of the Settlement Class are geographically dispersed, not only throughout the country, but also overseas, and the size of many of their claims are not

significant enough to justify bringing individual actions.  *Id.*   Accordingly, Rule 23(a)'s numerosity requirement is satisfied.

### 2.    There Are Common Questions of Law and Fact

Rule 23(a)(2) requires the existence of at least one question of law or fact common to the class.  *See Cent. States*, 504 F.3d at 245; *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001).   Federal securities cases easily meet the commonality requirement, which is satisfied where "putative class members have been injured by similar material misrepresentations and omissions."  *Initial Pub. Offering*, 243 F.R.D. at 85; *see In re Globalstar Sec. Litig.*, No. 01 Civ. 1745 (PKC), 2004 WL 2754674, at *4 (S.D.N.Y. Dec. 1, 2004) ("Common questions of law and fact in this action include whether certain statements were false and misleading, whether those statements violated the federal securities laws, whether those statements were knowingly and recklessly issued, and ensuing causation issues."); *In re Oxford Health Plans, Inc., Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Where the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met.").

Here, the claims of Lead Plaintiffs and the Settlement Class each arise out of the same statements in the Offering Documents, which were used to sell the Certificates to the Lead Plaintiffs and each Member of the Settlement Class.   Moreover, the different tranches of Certificates in each Offering are interrelated and issued pursuant to common prospectus supplements, thus any material untrue statement or omission in the Offering Documents would similarly affect investors in all the Certificates issued pursuant to those Offering Documents. *See generally* Class Certification Brief at 11, D.E. #118.  Because these questions of law and fact are common to all Members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met.

### 3.    The Class Representatives' Claims Are Typical of Those of the Settlement Class

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  Typicality is established where "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members."  *In re Vivendi Sec. Litig.*, 242 F.R.D. 76, 85 (S.D.N.Y. 2007); *see also Oxford Health Plans*, 191 F.R.D. at 375.  "Typical" does not mean "identical."  *See Marsh & McLennan*, 2009 WL 5178546, at *10.  The focus of the typicality inquiry is not the plaintiff's behavior, but rather the defendants' actions.  *See ACLN*, 2004 WL 2997957, at *4.  The critical question is whether the proposed class representatives and the class can point to the same "common course of conduct" by defendants to support a claim for relief.  Accordingly, "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct."  *Marsh & McLennan*, 2009 WL 5178546, at *10; *see also Robidoux*, 987 F.2d at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

Here, like each Member of the Settlement Class, Lead Plaintiffs purchased Certificates pursuant to the Offering Documents, which contained the same untrue representations and omissions concerning underwriting and appraisal practices, LTV ratios and credit ratings.  *In re Dynex Capital, Inc. Sec. Litig.,* No. 05 CIV. 1897 (HB), 2011 WL 781215, at *8 (S.D.N.Y. Mar. 7, 2011) (finding claims to be typical because legal theories and proof would be the same for plaintiffs' claims alleging violations of underwriting and origination guidelines in the offerings).

Thus, Lead Plaintiffs' claims arise from the same course of conduct that gives rise to the claims of every other Settlement Class Member who purchased Certificates, and they will focus on the same misrepresentations and omissions, and assert the same legal theories, in proving the Defendants' liability. *See Katz*, 2010 WL 2926196, at *4.

Indeed, typicality is easily demonstrated here. Lead Plaintiffs and the Settlement Class, with regard to each Trust, all sue on the same alleged misrepresentations based on the same legal theories in the same Offering Documents, and involving identical defendants. Moreover, the alleged untrue statements and/or material omissions in the Offering Documents adversely affected all Certificates in each tranche of all the Offerings at issue. Class Certification Brief at 13, D.E. #118. As such, Lead Plaintiffs satisfy the typicality requirement. *See In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 134-35 (S.D.N.Y. 2008).

### 4. The Class Representatives Will Fairly and Adequately Protect the Interest of the Settlement Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must measure the adequacy of representation by two standards: whether (1) the claims of the Lead Plaintiffs conflict with those of the class; and (2) Lead Plaintiffs' counsel are qualified, experienced and able to conduct the litigation. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Marsh & McLennan*, 2009 WL 5178546, at *10; *Oxford Health Plans,* 191 F.R.D. at 376.

Lead Plaintiffs and the Settlement Class share the common objective of maximizing their recovery, and no conflict exists between Lead Plaintiffs and Settlement Class Members. *See Drexel*, 960 F.2d at 291; *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members"). Lead

Plaintiffs' interests are directly aligned with the interests of the Settlement Class who collectively purchased Certificates pursuant to the same material untrue statements and omissions in the Offering Documents.  *See Hicks v. Morgan Stanley & Co*., No. 01 CIV. 10071(HB), 2003 WL 21672085, at *3 (S.D.N.Y. July 16, 2003) (finding proposed class representative adequate where the complaint alleged "a common course of conduct and a unitary legal theory for the entire class period – that is, Defendants issued prospectuses and registration statements that contained false statements about the Trust's NAV, because the loans were not properly valued"); *In re WorldCom, Inc. Sec. Litig*., 219 F.R.D. 267, 282 (S.D.N.Y. 2003) (explaining that "named plaintiffs' interests are directly aligned with those of the absent class members: they are purchasers of WorldCom equity and debt securities who suffered significant losses as a result of the investments").

Lead Plaintiffs have also demonstrated their commitment to monitor and supervise the prosecution of this action on behalf of the interests of the Settlement Class.  Lead Plaintiffs have retained experienced counsel, receive regular status updates and participate in strategic decisions and are actively participating in discovery.  Indeed, each of the Lead Plaintiffs prepared for and sat for a deposition, and attended the mediation session with Judge Phillips.  Lead Plaintiffs are precisely the type of institutional investors Congress sought to empower when passing the PSLRA.

Moreover, there is also no doubt that Lead Counsel is qualified and capable of prosecuting this action.  Robbins Geller and Labaton Sucharow have been prosecuting securities class actions for years and have proven track records of success in complex securities class actions such as this.  *See* Gardner Decl., Exhibits 2 and 3.  Therefore, Rule 23(a)(4) is satisfied.

**B.      The Class Representatives' Claims Satisfy the Prerequisites of Rule 23(b)(3)**

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) is "designed to secure judgments binding all class members save those who affirmatively elected to be excluded," where a class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Amchem*, 521 U.S. at 614-15.  Certification of the Settlement Class serves these purposes.

**1.      Common Legal and Factual Questions Predominate**

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Marsh & McLennan*, 2009 WL 5178546, at \*11 (quoting *Moore v. Paine Webber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).  Common issues will predominate where each class member is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct, and the only individualized questions concern the amount of damages.  *See Marsh & McLennan*, 2009 WL 5178546, at \*11; *Initial Pub. Offering*, 243 F.R.D. at 92; *In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999) ("In determining whether common questions of fact predominate, a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class.").  As the Supreme Court has noted, predominance is a test "readily met" in cases alleging securities fraud. *Amchem*, 521 U.S. at 625.

Here, the same alleged course of conduct by the Defendants forms the basis of all Settlement Class Members' claims.   There are numerous common issues relating to the Defendants' liability which predominate over any individualized issues.   *See generally* Class Certification Brief at 16-20, D.E. #118.   The predominance requirement of Rule 23(b)(3) is, therefore, satisfied.

### 2.       A Class Action is Superior to Other Methods of Adjudication

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by … class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."   *See* Fed. R. Civ. P. 23(b)(3).

Considering these factors, this consolidated class action is clearly "superior to other available methods for fairly and efficiently adjudicating" the federal securities law claims of the large number of Persons who purchased or otherwise acquired the Certificates during the Relevant Time Period.   Indeed, courts have concluded that the class action device in securities cases is usually the superior method of redressing injuries to a large number of individual plaintiffs:

> In general, securities suits such as this easily satisfy the superiority requirement of Rule 23.   Most violations of the federal securities laws, such as those alleged in the Complaint, inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursing individual litigation to seek recovery is often not feasible.   Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would neither be "fair" nor an adjudication of their claims.   Moreover, although a large number of individuals may have been injured, no one person may have been

21

damaged to a degree which would induce him to institute litigation solely on his own behalf.

*Blech,* 187 F.R.D. at 107.  *See also Marsh & McLennan*, 2009 WL 5178546, at *12 (recognizing that the "class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions"); *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 139 (S.D.N.Y. 2008) ("as a general rule, securities fraud cases 'easily satisfy the superiority requirement [as] [m]ost violations of the federal securities laws ... inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursing individual litigation to seek recovery is often not feasible'").

Here, the scope and complexity of Lead Plaintiffs' claims against the Defendants, together with the high cost of individualized litigation, make it unlikely that, absent class certification, the vast majority of the Settlement Class Members would be able to obtain relief. Finally, any potential difficulties of managing the class action in further litigation and at trial need not be considered here.  As the Supreme Court explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."  521 U.S. at 620.  Accordingly, the requirements of Rule 23(b)(3) are satisfied.

## III.    NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

Federal Rule of Civil Procedure 23(e)(1) requires that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal" (*i.e.*, the proposed settlement).  Here, the Settling Parties negotiated the form of the Notice to be disseminated to all persons who fall within the definition of the Settlement Class and whose names and addresses can be identified with reasonable effort from or through Defendants' records.  In addition, the

Claims Administrator[6] will send the Notice to entities which commonly hold securities in "street name" as nominees for the benefit of their customers who are the beneficial purchasers of the securities.  The Settling Parties further propose to supplement the mailed Notice with a Summary Notice published in *Investor's Business Daily* and transmitted over *PR Newswire*.  The Notice and Summary Notice are attached to the Stipulation as Exhibits A-1 and A-3.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."  Fed. R. Civ. P. 23(h)(1).  Here, the Notice satisfies the requirements of Rule 23(h)(1), as it notifies Settlement Class Members that Lead Counsel will apply to the Court for attorneys' fees of no more than 29% of the Settlement Fund and expenses of no more than $950,000, plus interest on those amounts.  *See* Stipulation, Ex. A-1.  The Notice also states that as part of this request, Lead Plaintiffs may seek reimbursement of up to $35,000 for time and expenses (including lost wages) incurred representing the Settlement Class in accordance with 15 U.S.C. §77z-1(a)(4).

Furthermore, in securities class actions, the PSLRA requires the notice of settlement to include: (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis;" (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement from each settling party concerning the issue or issues on which the parties disagree;" (3) "a statement indicating which parties or counsel intend to make . . . an application [for attorneys' fees or costs], the amount of fees and

---

[6]  The proposed Claims Administrator is Gilardi & Co. LLC, which has almost 25 years of experience in class action administration and has handled some of the largest securities settlements in history, including the *Enron* shareholder settlements.  *See generally* http://www.gilardi.com (last visited March 15, 2012).

costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought;" (4) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members;" and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement."

The proposed Notice describes the Settlement and sets forth the aggregate amount of the Settlement Fund ($32,500,000) and the estimated average recovery if claims are submitted for 100% of the eligible Certificates (an average of $12.80 per $1,000 in initial certificate value); states the Settling Parties' disagreement over liability and damages; sets out the amount of attorneys' fees and expenses that Lead Counsel intend to seek in connection with final settlement approval (an average of $4.09 per $1,000 in initial certificate value); and describes the Plan of Allocation.  In addition, the Notice explains the nature, history, and status of the Litigation; sets forth the definition of the Settlement Class; states the Settlement Class's claims and issues; discusses the rights of persons who fall within the definition of the Settlement Class; and summarizes the reasons the Settling Parties are proposing the Settlement.

Further, for those Settlement Class Members who wish to participate in the Settlement, the Notice and the Proof of Claim provide instructions on the process for completing and submitting the Proof of Claim.  The Notice also provides the name and mailing address for the Claims Administrator, Lead Counsel, and counsel for Defendants.  The Summary Notice also informs Settlement Class Members that copies of the Notice and Proof of Claim may be obtained by writing the Claims Administrator, or by accessing the documents on the website of the Claims Administrator.  Finally, the Notice sets forth the date, time and place of the Final Approval Hearing, along with the procedures for objecting to or seeking exclusion from the Settlement.

24

Accordingly, the Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," *Wal-Mart*, 396 F.3d at 114.  The manner of providing notice, which includes individual notice by mail to all Settlement Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23.  *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515, 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008).

## CONCLUSION

Lead Plaintiffs respectfully request that the Court  (i) preliminarily approve the proposed Settlement; (ii) certify the Settlement Class for purposes of the Settlement only; (iii) approve the proposed form and manner of notice; and (iv) schedule a hearing on Lead Plaintiffs' motion for final approval of the Settlement and Lead Counsel's motion for attorneys' fees and expenses.  A proposed Preliminary Approval Order is being submitted herewith.[7]

Dated:  March 26, 2012                                              Respectfully submitted,

**ROBBINS GELLER RUDMAN & DOWD LLP**                        **LABATON SUCHAROW LLP**

                                                           _/s/ Jonathan Gardner_
Arthur C. Leahy                                            Christopher J. Keller
655 West Broadway, Suite 1900                             Jonathan Gardner
San Diego, CA  92101                                      Paul Scarlato

---

[7] The order, which has been negotiated by the Settling Parties, sets out the following proposed schedule: (i) Notice mailed to Settlement Class ("Notice Date") no later than 10 business days after entry of the order; (ii) Summary Notice published no later than 14 calendar days after the Notice Date; (iii) filing of initial papers in support of the Settlement, Plan of Allocation, and request for an award of attorneys' fees and expenses on or before 38 calendar days prior to the hearing; (iv) deadlines for objecting to the Settlement/request for attorneys' fees and expenses are 21 days prior to the hearing; (v) filing reply papers no later than 7 calendar days prior to hearing; (vi) Final Approval Hearing approximately 90 days after entry of the order; and (vii) Proof of Claims due no later than 120 after the Notice Date.

Telephone:  619/231-1058
Facsimile:  619/231-7423

– and –

**ROBBINS GELLER RUDMAN
& DOWD LLP**

Samuel H. Rudman
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100

*Co-Lead Counsel for*
*Lead Plaintiffs and the Settlement Class*

Serena Hallowell
140 Broadway
New York, NY  10005
Telephone:  212/907-0700
Facsimile:  212/818-0477

*Co-Lead Counsel for*
*Lead Plaintiffs and the Settlement Class*